Syllabus.

# Richmond.

## FITZGERALD V. SOUTHERN FARM AGENCY.

### January 24, 1918.

1. VENUE—*Real Estate Brokers—Action by Broker for Commission—*
*Where Cause of Action Arises.*—Defendant, the owner of a
farm, entered into a contract with plaintiff, a real estate agent,
under which plaintiff was to receive a certain commission for
negotiating the sale of defendant's farm at a certain price.
The contract was entered into, signed and delivered in the city
of Lynchburg, where plaintiff's real estate office was, and the
farm was situated in Buckingham county, where plaintiff lived.
Plaintiff obtained a purchaser for the farm, but at a lower
price than that authorized by his contract with defendant, and
a supplemental contract was entered into between plaintiff
and defendant in Buckingham county, whereby defendant
agreed to accept the lower price and plaintiff agreed to accept
a smaller commission.

   *Held:* That, the later agreement between the parties, entered into
   in Buckingham county, whereby the selling price and the com-
   missions were changed, was merely a modification of the original
   agency contract; and, as the primary contract of agency was
   made in Lynchburg, at least a part of the cause of action arose
   there; and, as section 3215 of the Code of 1904 authorizes the
   bringing of an action "in any county or corporation wherein
   the cause of action, or any part thereof, arose, although none
   of the defendants reside therein," the Corporation Court of the
   city of Lynchburg had jurisdiction of an action of assumpsit
   by plaintiff against defendant for his commission.

2. ABATEMENT AND REVIVAL—*Duplicity.*—A plea in abatement set
   up as a defense that neither the cause of action, nor any part
   of it, arose within the jurisdiction of the trial court, and also
   that at the time of the service of the writ upon the defendant,
   defendant was within the jurisdiction solely for the purpose of
   defending another suit brought against him by the plaintiff.

   *Held:* That the plea was bad for duplicity.

3. ABATEMENT AND REVIVAL—*Duplicity.*—Where a plea in abatement
   presents two distinct and sufficient defenses, either of which,
   if true, would necessitate a finding on the issue in favor of the
   pleader, the plea is bad for duplicity.

4. APPEAL AND ERROR—*Harmless Error—Instructions—Substitution of Instructions.*—Although an instruction requested by defendant was correct as a statement of abstract legal propositions, and the court would not have erred in giving it, there was no reversible error in the substitution of another instruction which was a clear, correct and adequate statement of the law from the defendant's standpoint as applied to the facts of the case in hand.

Error to a judgment of the Corporation Court of the city of Lynchburg, in an action of assumpsit. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Byrd, Fulton & Byrd, Robert G. Hundley* and *Hubard. Gayle & Boatwright,* for the plaintiff in error. .

*Aubrey E. Strode,* for the defendant in error.

KELLY, J., delivered the opinion of the court.

On the 30th of May, 1914, J. H. Fitzgerald, desiring to sell his farm, entered into a written contract with William Beasley, a real estate agent doing business under the name of Southern Farm Agency. Fitzgerald resided in Buckingham county, where the farm was situated. Beasley's real estate office was in the city of Lynchburg, and the contract was signed and delivered there. It was as follows:

"To the Southern Farm Agency: Gentlemen: We hereby authorize you to sell and execute the customary preliminary contract of sale for the within described property (referring to an accompanying written description) being the same land conveyed by deed duly recorded, at the price of $35,000 payable $.......... cash and balance in equal installments, payable in one, two and three years, the deferred

34

payments to carry interest at the rate of six per centum per annum, payable annually, and to be secured by deed of trust on the property.

"If the property is sold at and on the foregoing price and terms or such different prices and terms as may be agreeable to the owner by you or as the result of your influence or introduction, you are to have a commission of five per centum of the selling price, which is hereby assigned to you, and is to be paid out of the first money coming from the purchaser. If the property is exchanged, you are to have five per centum commission on the above valuation. We reserve the right to sell the property ourselves or through other agents to any one whose attention was not called to the property by you.

"You are to be given fifteen days' written notice of the withdrawal of the property, but if at any time it is sold to a party whose attention directly or indirectly was called to it by you, you are still to get your commission. We hereby waive our exemption as to these obligations."

Beasley brought the property to the attention of one C. E. Dawson, a citizen of Illinois, and after considerable time and labor expended in negotiations and in trips to Buckingham county with Dawson to visit the farm and its owner, Beasley obtained from Dawson a written offer of purchase at the price of $27,000, subject to certain terms and conditions specified in the offer and not necessary to be repeated here.

This offer was written and signed in Nelson county where Dawson was temporarily located, and was carried by Beasley to Fitzgerald in Buckingham county, where the latter accepted the same, subject to certain conditions set out by him in his written acceptance. On this occasion, however, he informed Beasley that if the sale was made at $27,000, the commissions thereon would have to be reduced

from 5%, as fixed in the original contract of agency, to a flat sum of $1,000. Beasley agreed to this, and thereupon he and Fitzgerald signed the following agreement:

"It is hereby agreed that in case sale is made of J. H. Fitzgerald's farm to C. E. Dawson for $27,000 the Southern Farm Agency is to have a commission of $1,000 in full of all claims for commissions against said Fitzgerald, but leave is given said Southern Farm Agency to price and sell the property for any sum over $27,000 they may see fit and all excess over $26,000 that they get is to go to them as their commission."

Beasley returned to his office in Lynchburg, where he met Dawson the next day and procured from him a slightly qualified acceptance of the conditions imposed on his original offer by Fitzgerald. Dawson and Beasley then proceeded again to Buckingham county, where they met Fitzgerald, and where, after some further parleying, Dawson withdrew all qualifications from his acceptance of the conditions insisted upon by Fitzgerald, and the contract between them was thus finally closed.

Subsequently, Fitzgerald claimed that he was mentally incompetent to make the contract, and declined to convey the farm in accordance therewith. Dawson was ready to perform on his part, but decided to end the matter so far as he was concerned, and did so by a letter to Fitzgerald, in which, among other things, he said: "I am unwilling to become involved in any litigation with you about the matter, though I am advised that I could easily force you to live up to the contract and let me have the land, so I hereby notify you that the deal between you and me is off, and I have this day been paid by the Southern Farm Agency the $500 which I placed in their hands on account of the cash payment of your land."

Beasley claimed that he had done all his contract required to entitle him to his commission, but Fitzgerald refused to

recognize the claim, and Beasley then brought this action of assumpsit in the Corporation Court of the city of Lynchburg. There was a verdict and judgment in his favor for $1,000, to which this writ of error was awarded. For convenience, we shall hereafter designate the parties, respectively, as plaintiff and defendant, in accordance with their position in the lower court.

The first assignment of error calls in question the action of the trial court in dismissing the defendant's plea in abatement No. 1, which set up as a defense, "that the supposed cause of the said action did not, nor did any part thereof, arise in the said city of Lynchburg, but that the supposed cause of the said action and every part thereof, did arise within the county of Buckingham, and at the time of the issuing of the said writ in this cause, the said defendant did not reside in the said city of Lynchburg, but that he did then reside, and has ever since resided, and does now reside, in the county of Buckingham."

Issue was joined upon this plea, and the court found, upon a submission to it of all matters of law and fact thus arising, that the cause of action, or a part thereof, arose in the city of Lynchburg, and that, therefore, under section 3216 of the Code, authorizing the bringing of an action "in any county or corporation wherein the cause of action, or any part thereof, arose, although none of the defendants reside therein," the plea was bad.

It is conceded, as of course it must be, that there was no error in this ruling if the court was right in finding as a fact that the cause of action or some part thereof arose in Lynchburg. Counsel for defendant have presented us with an argument, ably and resourcefully constructed, to show that the cause of action and every part thereof arose, as the plea alleges, in Buckingham county. This argument rests upon the contention that Beasley's right to commissions depended upon his agency contract with Fitzgerald and his produc-

tion of a purchaser thereunder bound by a valid contract, and upon the further contention that both the contract of agency and the contract of sale were made wholly within the county of Buckingham. The infirmity in the argument lies, as we think, in the latter contention. We are unable to regard the written agreement between the parties, entered into in Buckingham county, whereby the selling price and the commissions were changed, otherwise than as a modification of the original agency contract; and the parties evidently so understood it. The prospective purchaser had been secured under the authority of the original, which in terms contemplated the possibility of a less price than that expressly named therein; and the only purpose of the supplemental agency agreement was to prevent the original from operating, as it would otherwise have done, to fix the commission at the rate of five per centum upon the amount of the purchase price. The supplemental contract was not necessary in order to authorize the sale at $27,000. That price and the conditions upon which it would be accepted were fixed by Dawson's offer and Fitzgerald's conditional acceptance. The primary contract of agency having been made in Lynchburg, we have no difficulty in holding that at least a part of the cause of action arose there.

The case, in the respect now under consideration, is within the reasoning adopted by this court in *Ferguson* v. *Grottoes Co.*, 92 Va. 316, 23 S. E. 761, the syllabus of which satisfactorily sets forth the essence of the decision as follows:

"*Common Law Action—Venue—Case at Bar.*—If a corporation, at its home office, employs an agent to sell its stock, and subsequently informs its agent by telegram, in answer to a telegram from him, that it has no more stock for sale, but that he can continue to sell stock in conjunction with another, who had an option on all the stock left, and divide commissions with him, and the agent does proceed

to make sales, this is not a new contract, but a modification of the original agreement, and an action to recover commissions on stock sold before and after the said telegram must be brought within the jurisdiction of the home office, and cannot be maintained in the jurisdiction where the telegram was received by such agent."

The second assignment of error involves the propriety of the trial court's action in rejecting defendant's plea in abatement No. 2. This plea was identical with plea No. 1 as far as the latter went, but attempted to add thereto a second and wholly separate and distinct ground of defense, namely, that "at the time of the service of the writ in this action upon him, he, the said defendant, was in the city of Lynchburg solely for the purpose of defending another suit brought against him by the same plaintiff."

At the argument of the case in this court, counsel for defendant, while not actually abandoning this assignment of error, practically conceded that, under the authorities in this State, the plea was bad for duplicity.

Counsel for plaintiff, while insisting that the plea was plainly double and, therefore, fatally defective, further contend, with much show of reason and authority, that as a plea of privilege its allegations were not sufficiently clear and definite to show that the defendant was immune from service of process. We deem it unnecessary, however, to pass upon the latter contention. If the facts averred are no sufficient to set up a good defense upon the ground of privilege the plea was not double and was good as to the venue, but in that view there was no error in rejecting it, because the same defense was set up in plea No. 1. If, on the other hand, we assume that the averments in plea No. 2 were sufficient for a plea of privilege, its rejection was also clearly right. Judge Riely, with characteristic perspicuity, states the rule here applicable, in *Guarantee Co.* v. *Bank*, 95 Va. 480, 488, 28 S. E. 909, 912, as follows: "If either of the

defenses set up in the plea were true, the verdict upon the
issue must have been for the defendant.   So that the plea
presented two distinct and sufficient defenses, either of
which, if true, would have necessitated a finding on the
issue in favor of the Guarantee Company.   The plea was
therefore bad for duplicity."

The only remaining ground of error upon which, as we
understand, serious reliance is placed, relates to the refusal
of the trial court to give instruction "D," and giving in lieu
thereof instruction 4.

Instruction "D," offered by the defendant and refused by
the court, was as follows:

"The court instructs the jury that it is the duty of a real
estate agent who undertakes to procure a purchaser of
property placed with him for sale to act in the utmost good
faith with his principal.   It is his duty to place his princi-
pal in full possession of all the facts bearing upon his per-
sonal interest and relations to the subject and toward the
prospective purchaser.   Loyalty to his trust is the most im-
portant duty which the agent owes to his principal.   The
law will not allow an agent to act for himself and his prin-
cipal, nor to act for two principals on opposite sides in the
same transaction.

"All such transactions are voidable and may be repudi-
ated by the principal without showing that he was injured.

"And if the jury believes from the evidence that the
plaintiff in conducting the negotiations between the prospec-
tive purchaser and the defendant acted in reality as the
agent of both parties or in his own interest as opposed to
that of his principal, then they must find for the defendant,
unless they further find from the evidence that the defend-
ant, with full knowledge of all of the facts and relationships,
ratified his acts."

Instruction 4, given as a substitute for instruction "D,"
was as follows:  "The court instructs the jury that if they

believe from the evidence that the plaintiff in conducting the negotiations between the prospective purchaser and the defendant acted in reality as the agent of both parties or in his own interest as opposed to that of his principal, then the defendant would not be bound by the contract, unless they further find from the evidence that the defendant, with knowledge of all the facts, signed the contract."

In view of the evidence in this case, we are unable to understand how any possible prejudice could have resulted to the defendant from the rejection of instruction "D," and the substitution therefor of instruction 4. We have not been shown, and we cannot find, anything in the evidence which to our minds indicates any breach of faith or double dealing upon the part of the plaintiff. It is true that Fitzgerald attempted to show, in defense of the action, that he was mentally incapable, from disease and drink, of entering into the contract with Dawson, but upon that question the evidence was conflicting, and the jury, upon clear and proper instructions, found against the defendant. In so far as the evidence tended to show that Fitzgerald was not capable of making a contract, and that the sale was improvident and unwise, it was offset by Beasley's positive testimony that he had no reason to suspect that Fitzgerald was mentally unsound or intoxicated, by the statement of Fitzgerald's daughter that a casual observer would not notice the fact when he was drinking, by his own statement that he desired and endeavored to conceal his drinking from both Beasley and Dawson, and by much other evidence, which the jury thought sufficient, to show that Fitzgerald was capable of making the contract.

Instruction "D" was correct as a statement of abstract legal propositions, and we are not prepared to say, and need not say, that the court would have erred in giving it. But instruction 4 was certainly a clear, correct and ade-

quate statement of the law from the defendant's standpoint as applied to the facts of the case in hand, and there was no reversible error in the substitution.

The fourth and last assignment of error questions the refusal of the court to set aside the verdict. As stated in the defendant's petition for the writ of error, "the argument on this assignment is comprehended in the argument on assignments 1, 2 and 3."

We find no error in the judgment complained of, and it must be affirmed.

*Affirmed.*